UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HW AVIATION LLC, an Illinois limited
liability company,

    Plaintiff/Counter-Defendant,

v.                                                       Case No.: 8:07-cv-2325-T-23MAP

ROYAL SONS, LLC, a Florida limited liability
company; ROYAL SONS MOTOR YACHT
SALES, INC., a Florida corporation; and
FREDERIC J. GEFFON d/b/a ROYAL SONS,
INC., an individual,

    Defendants/Counter-Plaintiffs

v.

JEFFREY WOLFSON, individually, and
GEOFFREY HODGSON, individually,

    Third-Party Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on HW Aviation LLC's motion to strike affirmative defenses (doc. 9) and HW Aviation, Jeffrey Wolfson, and Geoffrey Hodgson's motion to dismiss Counts II and III of Royal Sons' Counterclaim/Third-Party Claim ("Counterclaim") and for an extension of time to respond to the Counterclaim (doc. 10).[1] After consideration, I recommend that the motion to dismiss and motion for extension of time to respond to the counterclaim be granted, and that the motion to strike be granted in part, as set forth below.

---

[1] The district judge referred the matter to me for a report and recommendation (doc. 15). *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

*A.     Background*

This dispute relates to the purchase of an aircraft. In May of 2004, Jeffrey Wolfson and Geoffrey Hodgson (the principals of HW Aviation) entered into negotiations with Frederic J. Geffon (owner of Royal Sons Motor Yacht Sales, Inc. and Royal Sons, Inc.) to sell an aircraft, registration number 900SA, to Royal Sons.[2] The parties disagree about whether a valid contract formed between them (Royal Sons asserts that HW Aviation had transferred ownership of the aircraft as of May 1, 2004, and therefore could not subsequent to that date contract to sell something it did not own) and their obligations under any such contract.

According to the allegations in Royal Sons' Counterclaim, the parties exchanged several drafts of the purchase agreement in May and June of 2004.[3] On July 19, 2004, Geffon faxed an unsigned version of the purchase agreement to HW Aviation. The agreement required HW Aviation to repair four pages of problems with the aircraft (the "squawk list") and specified that the transaction would include an FAA Part 125 Certificate ("125 Certificate"), without which the aircraft could not be lawfully operated. The 125 Certificate was owned by AGS Partnership, a non-party to this litigation, but Royal Sons asserts, upon information and belief, that Hodgson and Wolfson are its sole partners. The agreement specified it would expire if not accepted by 5 p.m.

---

[2] Defendants/Counter-Plaintiffs include several entities bearing the name "Royal Sons." HW Aviation states that it sued each of these entities because it was not always clear during the parties dealings "which such entity Geffon purported to represent at which time." *See* HW Aviation's Motion to Dismiss at 2, n.1. The differences between these entities are not relevant to the motion to dismiss or motion to strike, so I will refer to all of them without distinction as "Royal Sons."

[3] Because a Court must construe the factual allegations in the light most favorable to the non-moving party when ruling on a motion to dismiss, *see Kizzire v. Baptist Health System, Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006), the factual background is based primarily on the allegations in Royal Sons' Counterclaim.

on July 19, 2004. That same day, HW Aviation returned a signed copy of the agreement to Geffon. Royal Sons contends that this agreement expired without being accepted because Geffon never signed it. *See* Counterclaim at 4, ¶ 19.

Geffon told HW Aviation that he would only sign the agreement if HW Aviation repaired the items on the squawk list. HW Aviation did not do so, and the aircraft remained in an unairworthy condition for several months. Negotiations resumed in April of 2005. Geffon again said he would not sign unless the squawk list items were repaired, and HW Aviation promised that if Geffon purchased the aircraft, part of that transaction would require HW Aviation to repair the items. HW Aviation also asked Royal Sons to include additional provisions into the July 19, 2004, agreement, altering the terms of the stock transaction and providing that Wolfson would receive a credit of 400 hours of flight time. Geffon agreed to these additions, and on April 7, 2005, signed a writing memorializing these provisions which stated, "This should be added to the original agreement on the sale of 900SA."

HW Aviation did not repair the maintenance items, and on April 14, 2005, the FAA conducted a surprise inspection and noted a multitude of maintenance issues with the aircraft. These issues were not repaired, and the FAA revoked AGS Partnership's 125 Certificate. Royal Sons contends that the revocation of the 125 Certificate caused the decline in value of the 900SA aircraft as well as another aircraft owned by Royal Sons operating under the same 125 Certificate.[4] Royal Sons states that Hodgson and Wolfson were aware that Royal Sons had potential buyers for the aircrafts, but these potential buyers ceased negotiations when the FAA revoked the 125

---

[4] Royal Sons states that it previously purchased another aircraft (registration number 120NE) from a non-party in January of 2004 that also operated under AGS Partnership's 125 Certificate.

Certificate. Royal Sons eventually repaired the 900SA and sold it to a nonparty, but alleges that it received a lower price than it could have if a valid 125 Certificate had remained in effect.

HW Aviation sued Royal Sons for breach, alleging that HW Aviation never received the tradable shares of stock it was entitled to under the agreement or the 400 hours of flight time owed to Wolfson (doc. 1). In their answer, Royal Sons raised thirteen affirmative defenses, among them the assertion that any contract was void because HW Aviation could not contract to sell what it did not own. But in the event that the Court found there to be a valid contract, Royal Sons brought a compulsory counterclaim against HW Aviation and third party claims against Hodgson and Wolfson individually. The Counterclaim contains three counts: breach of contract, as to HW Aviation (Count I); violation of Florida's Deceptive and Unfair Trade Practices Act, as to HW Aviation, Hodgson, and Wolfson (Count II); and tortious interference with advantageous business relationships, as to HW Aviation, Hodgson, and Wolfson (Count III).

HW Aviation, Hodgson, and Wolfson filed a motion to dismiss Counts II and III and extend the time for responding to the remaining count (doc. 10), and HW Aviation filed a motion to strike the affirmative defenses (doc. 9).

*B. Discussion*

*1. HW Aviation's Motion to Dismiss*

In deciding whether to grant a motion to dismiss, this Court must accept all the factual allegations in the complaint as true and must construe the facts alleged in the light most favorable to the non-moving party. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994). "Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." *Oxford Asset Mgmt, Ltd. v. Jaharis,* 297 F.3d 1182, 1188

4

(11th Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). *See also Oxford Asset Mgmt.*, 297 F.3d at 1188 ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."); *Robinson v. Jewish Ctr. Towers, Inc.*, 993 F.Supp. 1475, 1476 (M.D.Fla.1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions.").

*a. Tortious interference with prospective business relationships*

To state a claim for tortious interference with a business relationship, a party must allege: "1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; 2) the defendant's knowledge of the business relationship; 3) the defendant's intentional and unjustified interference with the relationship; and 4) damage to the plaintiff." *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (applying Florida law). "A business relationship need not be evidenced by a contract, but it generally requires 'an understanding between the parties [that] would have been completed had the defendant not interfered.'" *Id.*

Royal Sons' claim for tortious interference appears to be based on the same conduct that forms the basis for Royal Sons' claim for breach of contract: the failure to repair the 900 SA aircraft. The Counterclaim does not specify the "actions, inactions and/or omissions" which allegedly constituted the tortious interference, but since the Counterclaim alleges that this "tortious

5

interference" led to the revocation of the 125 Certificate, *see* Counterclaim at 16, ¶66, the complained-of conduct apparently is the alleged failure to maintain or repair the aircraft. *See* Counterclaim at 11–13, ¶¶ 33-47; *see also* Royal Sons' Response to Motion to Dismiss, doc. 12 at 8 (where the primary allegation in Royal Sons' summary of its tortious interference claim is the failure to "make repairs and reacquire the Part 125 certificate").

In general, the economic loss rule prevents a party from bringing a separate action in tort to recover for economic losses resulting from a breach of contract.[5] *See Indemnity Insur. Co. of North Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla.2004). "Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made." *Id.* Thus, "courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537.

Although a tort claim can survive the application of the economic loss rule "where there is some wrongful conduct which amounts to an independent tort in addition to the conduct resulting in the contractual breach," *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir.1990), in this case, the only allegedly wrongful conduct is the failure to repair the aircraft, which is the gravamen of the breach of contract claim. Thus, HW Aviation's alleged failure to make repairs does not constitute a separate and independent tort, even if this alleged failure to repair might have incidentally and consequentially resulted in the frustration of Royal Sons' efforts to sell or lease the

---

[5] At the Court's request, the parties filed supplemental briefs addressing the applicability of the economic loss rule. *See* docs. 22 and 23.

aircraft. *See Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1356–57 (S.D. Fla. 1999) (finding that a tortious interference claim was barred by the economic loss rule where the claim has "nothing to do with conduct toward third parties – its 'focus' is on the parties' contractual relationship. It is exactly this sort of legal alchemy, i.e., the conversion of alleged breaches of contract into tort claims, that the economic loss rule was designed to prevent."); *Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*, 510 F.Supp.2d 1015, 1026 (S.D. Fla. 2007) (dismissing claim for tortious interference based on the economic loss rule where "the facts alleged in [the tortious interference count] are indistinguishable from those stated in the breach of contract claim").

Royal Sons' attempt to distinguish its tortious interference claim from its breach of contract claim is unavailing. Royal Sons claims the former is based on "HW Aviation's failure to repair an aircraft, without reference to the intent that motivated its (in)actions," while the latter is based on the "intent" to deprive Royal Sons of the 125 Certificate. *See* Royal Sons' Supplemental Brief, doc. 22, at 3–4. However, "even where breach is intentional, the economic loss rule forecloses tort claims." *Topp, Inc. v. Uniden Am. Corp.*, 483 F.Supp.2d 1187, 1197 (S.D.Fla. 2007); *see also Kee*, 918 F.2d at 1543 ("A breach of contract . . . cannot be converted into a tort merely by allegations of malice.").

Royal Sons argues that the economic loss rule should not apply to its claims against Hodgson and Wolfson, since it was not in privity with them. The economic loss rule often is phrased in terms of contractual privity. *See, e.g.*, *Indemnity Ins.*, 891 So.2d at 536–37 ("[W]hen the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual

agreement."). However, courts also recognize that where a tort claim against a company would be barred by the economic loss rule because it is based on the same conduct giving rise to the claim for breach, claims against the company's officers or employees based on the same conduct are likewise barred. *See Vesta Constr. and Design, LLC v. Lotspeich & Assocs., Inc.*, 974 So.2d 1176, 1180 (Fla. 5th DCA 2008) ("[I]t would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation."); *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F.Supp.2d 1360, 1371 (S.D. Fla. 2008) (finding that the economic loss rule barred a claim against a member of a limited liability company and officer of corporation, even though he was not a signatory of the contracts, and stating that "[t]o find otherwise would lead to incongruous result that the economic loss rule would bar applicable tort claims against a corporation, but not against the directors or officers of the corporation who negotiated the agreement."); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F.Supp.2d 1310, 1314–15, 1319–20 (S.D. Fla. 2002) (dismissing tortious interference claim against the senior vice president of a corporation based on the economic loss rule, where the vice president was not a party to the contract but had signed the contract on behalf of the corporation). In this case, there are no allegations that Wolfson or Hodgson engaged in any acts constituting interference other than the general allegations relating to the failure to repair the aircraft or maintain the 125 Certificate. Since these allegations essentially restate the breach of contract claim against HW Aviation, the economic loss rule bars the individual claims against Wolfson and Hodgson as

well.[6]

Thus, I recommend that the claim for intentional interference with prospective business relationships (Count III) be dismissed without prejudice, and that Royal Sons be allowed the opportunity to amend their Counterclaim to cure this defect if they can in good faith state a proper claim for intentional interference.

### b. FDUTPA

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A practice is unfair when it "'offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' (or competitors or other businessmen)." *See*

---

[6] Moreover, even if dismissal was not warranted under the economic loss rule, dismissal may still be appropriate because Royal Sons fails to plead facts demonstrating that the negotiations with potential customers had progressed to a point where "an actual and identifiable understanding or agreement" had been reached "which in all probability would have been completed" but for the interference. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994); *Ferguson Transp., Inc. v. North Am. Van Lines, Inc.*, 687 So.2d 821, 821 (Fla. 1996) ("[I]n order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); *see also Sarkis v. Pafford Oil Co., Inc.*, 697 So.2d 524, 526–27 (Fla. 1st DCA 1997) (holding that claim of interference with a business relationship was properly dismissed where the complaint only alleged a "general loss of business" and did not "identify the customers who were the subject of the alleged interference"); *but see Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1566, 1570 (S.D. Fla. 1996) (finding allegations of an ongoing relationship with unspecified "customers" sufficient to withstand a motion to dismiss, and stating, "Although the complaint is drafted at a high order of abstraction, and does not specifically identify each of the relationships allegedly interfered with, we are hard pressed to conclude that at this early stage of the proceedings that [the plaintiff] could prove no facts to support its cause of action."). *See also Int'l Sales & Serv., Inc. v. Austral Insulated Prods. Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001) (noting that this area of Florida law is "lacking in clarity," and therefore assuming for purposes of that case that a business relationship existed, and resolving the case on other grounds).

9

*Day v. Le-Jo Enters., Inc.*, 521 So. 2d 175, 178 (Fla. 3d DCA 1988). A deception occurs only if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000). Conduct constituting a breach of contract may be cognizable under FDUTPA. *See PNR, Inc. v. Beacon Prop. Mgmt, Inc.*, 842 So.2d 773, 777 n.2 (Fla. 2003).[7] However, absent "significant allegations of unfair or deceptive conduct," a complaint that merely alleges intentional breach of contract is insufficient to state a claim under FDUTPA. *See Hache v. Damon Corp.*, 2008 WL 912434 at *2 (M.D. Fla. 2008); *Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.,* 477 F.3d 583, 596 (8th Cir. 2007) ("The Florida Supreme Court has cautioned that breaches of contract, without more, are insufficient to state a claim under the statute.").

Although Royal Sons alleges in the FDUTPA count that HW Aviation, Hodgson, and Wolfson "have engaged in deceptive, unfair, and/or unconscionable trade practices," *see* Counterclaim at 15, ¶57, the Counterclaim does not specify what conduct was allegedly deceptive, unfair, or unconscionable. Conclusory allegations that a party engaged in deceptive, unfair, or unconscionable actions are insufficient to state a claim under FDUTPA. *See  Merrill Lynch Bus. Fin. Serv., Inc. v. Performance Machine Sys. U.S.A., Inc.*, 2005 WL 975773 at *9 (S.D. Fla. 2005) (recommending dismissal of FDUTPA count where count contained only conclusory allegations of deceptive conduct and lacked sufficient factual allegations of "unfair or deceptive" conduct; stating,

---

[7] The economic loss rule has no application to a statutory FDUTPA claim. *See Comptech Intern., Inc. v. Milam Commerce Park, Ltd.*, 753 So.2d 1219, 1223 (Fla. 1999); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 609 (Fla. 2d DCA 1997).

"To reiterate for emphasis, Defendants must do more than merely recite conclusory allegations; they must allege facts which properly raise recognizable FDUTPA claims."); *Infinity Global, LLC v. Resort at Singer Island, Inc.*, 2008 WL 1711535 at *4 (S.D. Fla. 2008) ("To state a cause of action under FDUTPA, a plaintiff must do more than merely allege in a conclusory fashion that a defendant's actions constituted an 'unfair or deceptive act' or that the defendant acted 'wrongfully, unreasonably and unjustly' and for a 'deceptive and improper purpose.'").

Accordingly, I recommend that the FDUTPA claim (Count II) be dismissed without prejudice, and that Royal Sons be allowed the opportunity to amend their Counterclaim "to cure this defect if they can in good faith allege a proper cause of action under FDUTPA." *See Hache*, 2008 WL 912434 at *2. Because I recommend that Royal Sons have the opportunity to file an amended counterclaim restating its FDUTPA claim, I recommend that HW Aviation's request for attorneys' fees under FDUTPA be denied. *See id.*

### 2. HWAviation's Motion to Strike Affirmative Defenses

HW Aviation moves to strike all thirteen of Royal Sons' affirmative defenses pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) allows the Court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court may strike an affirmative defense as "insufficient as a matter of law" if, on the face of the pleadings, the defense is patently frivolous or clearly invalid. *Microsoft Corp v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002); *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1318 (S.D. Fla. 2005). Affirmative defenses also may be stricken if they fail to meet the general pleading requirements of Fed. R. Civ. P. 8, which requires a short and plain statement of the defense asserted. Although a defendant need not provide "detailed and particular facts," the defendant must give "fair

notice" of the defense and "the grounds upon which it rests." *Morrison*, 434 F. Supp. 2d at 1318; *see also Microsoft*, 211 F.R.D. at 684 ("While an answer 'need not include a detailed statement of applicable defenses, a defendant must do more than make conclusory allegations.'"). Where an affirmative defense contains no more than "bare bones conclusory allegations," it must be stricken. *See Microsoft*, 211 F.R.D. at 684.

HW Aviation argues that the affirmative defenses all must be stricken because they are merely "bare bones" conclusions that do not satisfy the notice pleading requirements. Royal Sons claims in response that its affirmative defenses are sufficient because the allegations in the Counterclaim put HW Aviation on notice of the facts supporting the affirmative defenses, and claims that "the relationship of these facts to the Affirmative Defenses is specifically discussed in [the Counterclaim] and given nearly a full page of treatment and explanation," citing to the Answer (doc. 3) at 6. *See* Response to Motion to Strike, doc. 11, at 4–5. This page in the Answer does explain Royal Sons' Fourth Affirmative Defense: "that the Plaintiff transferred ownership of the airplane as of May 1, 2004 and therefore any subsequent contract between the Plaintiff and Defendants is null and void since the Plaintiff cannot contract for the sale of something it does not own." *See* doc. 3 at 6. However, it contains no discussion at all of Royal Sons' other affirmative defenses.

The general allegations in the counterclaim do not relieve Royal Sons of its obligation to put HW Aviation on notice of the grounds upon which each affirmative defense rests. Except for the Fourth Affirmative Defense, the affirmative defenses contain only bare-bones legal conclusions, with no assertions connecting the stated affirmative defenses with the factual allegations in this case. Accordingly, I recommend that all of the affirmative defenses except for the Fourth

Affirmative Defense be stricken without prejudice.[8] *See Microsoft*, 211 F.R.D. at 684; *Meridian of Palm Beach Condo. Assoc., Inc., v. QBE Ins. Corp.*, 2007 WL 1364334 at *2 (S.D. Fla. 2007) (striking affirmative defense of failure to comply with conditions precedent as a "conclusory bare-bones allegation"); *Home Mgmt. Solutions, Inc., v. Prescient, Inc.*, 2007 WL 2412834 at *4 (S.D. Fla. 2007) (striking affirmative defenses of unclean hands and setoff without prejudice where the affirmative defenses lacked "any supporting facts or the elements of the defense"); *Groves v. Patricia J. Dury, M.D., P.A.*, 2006 WL 2556944 at *2 (M.D. Fla. 2006) (striking affirmative defense of unclean hands where the defendant's assertions "sets forth no facts" and was "insufficiently pled"); *Merrill Lynch Bus. Fin. Serv., Inc. v. Performance Machine Sys. U.S.A., Inc.*, 2005 WL 975773 (S.D. Fla. 2005) (recommending that affirmative defenses of failure to state a claim, failure to mitigate damages, waiver and estoppel, and unclean hands be stricken without prejudice, because each of these affirmative defenses contained only "a bare-bones conclusory allegation which simply names a legal theory but does not indicate how the theory is connected to the case at hand").

### 3. HW Aviation's Motion for Extension of Time

Royal Sons does not oppose HW Aviation's request for additional time to respond to Count I of the Counterclaim. *See* Response to Motion to Dismiss, doc. 12, at 3. Accordingly, I recommend that the request for additional time be granted.

---

[8] It is questionable whether even the Fourth Affirmative Defense is properly labeled, since an affirmative defense, by definition, "is established only when a defendant *admits the essential facts* of a complaint and sets up other facts in justification or avoidance." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314,1318 (S.D. Fla. 2005) (emphasis in original). However, when a party labels what is actually a denial as an affirmative defense, "the proper remedy is not [to] strike the claim, but rather to treat it as a specific denial." *See Home Management Solutions, Inc. v. Prescient, Inc*., 2007 WL 2412834 at *3 (S.D. Fla. 2007).

*C. Conclusion*

Accordingly, it is

RECOMMENDED:

1. HW Aviation, Wolfson, and Hodgson's motion to dismiss Counts II and III of the Counterclaim and Third-Party Complaint be GRANTED, and Counts II and III be DISMISSED without prejudice.

2. HW Aviation's motion to strike affirmative defenses (doc. 9) be GRANTED in part and DENIED in part as follows:

   a. HW Aviation's motion to strike the Fourth Affirmative Defense be DENIED.

   b. HW Aviation's motion to strike the First, Second, Third and Fifth through Thirteenth affirmative defenses be GRANTED, and those affirmative defenses be STRICKEN without prejudice.

3. Royal Sons be given ten days to replead its affirmative defenses and serve an amended Counterclaim and Third-Party Complaint.[9]

4. HW Aviation be granted an extension of time to respond to Count I, as follows:

   a. If Royal Sons files an amended Counterclaim and Third Party Complaint, HW Aviation be allowed ten days after service of that amended Counterclaim and Third Party Complaint to respond to the Counterclaim and Third Party Complaint in its entirety; or

---

[9] Royal Sons requests the opportunity to file an amended pleading if this Court finds "any technical defects" in Counts II and III. *See* Response to Motion to Dismiss, doc. 12, at 9. Generally, a party should be given at least one opportunity to amend before the district court dismisses a complaint with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

b. If Royal Sons does not file an amended Counterclaim and Third Party Complaint, HW Aviation be allowed 20 days to respond to Count I.

IT IS SO REPORTED at Tampa, Florida, on August 21, 2008.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report. It shall also bar the party from attacking on appeal the factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc: The Honorable Steven D. Merryday
 Counsel of Record